United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Paola-Lourdes Bre, Petitioner, | ) |
| | ) |
| v. | ) |
| | ) Case No. 23-23928-Civ-Scola |
| | ) |
| Leandro-Sebastian Aguirre, | ) |
| Respondent. | ) |

### **Final Order Denying Petition Under the Hague Convention**

This matter is before the Court after a hearing on the Petitioner's Verified Complaint and Petition for Return of Children (ECF No. 1). A hearing was held on December 1, 2023, where the Respondent, Leandro-Sebastian Aguirre, appeared in person with counsel and Petitioner Paola-Lourdes Bre and her counsel appeared via Zoom. The hearing was set after this Court granted a temporary restraining order (ECF No. 7), prohibiting the Respondent from removing I.A.B., the Petitioner and Respondent's child, from the jurisdiction of this Court pending a hearing on the merits of the Petitioner's Complaint. The Court's order also resulted in the United States Marshals' retaining the passports of the Respondent and the minor child.

This case arises from Petitioner Bre filing a petition (the "Complaint") pursuant to the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89, and the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 9001, *et seq.*, to have her minor child, I.A.B., returned to her custody. (Compl., ECF No. 1 ¶¶ 1-2.) According to the Complaint, the Respondent has wrongfully retained I.A.B. in the Southern District of Florida despite the Petitioner's rights to custody of the child in Argentina. (*Id.* ¶¶ 9-11.) The child was born in the United States in January 2015, but in 2017 moved to Argentina with the Petitioner. (*Id.* ¶¶ 7-8.) On or about December 15, 2022, I.A.B. traveled to the United States to spend the Argentine summer break period with the Respondent, ending on March 15, 2023. (*Id.* ¶ 9.) The Respondent never returned I.A.B. to Argentina, and I.A.B. remains in the United States. (*Id.* ¶¶ 11-13.) The Petitioner alleges that she never consented to the child's retention in the United States following the child's short-term visit to Florida. (*Id.* ¶ 11.)

The Hague Convention "was enacted to secure the prompt return of children wrongfully removed to or retained in any Contracting State and to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." *Pielage v.*

*McConnell*, 516 F.3d 1282, 1286 (11th Cir. 2008) (internal quotation marks and citations omitted). The Court's inquiry in an action for the return of a child in these types of cases "is limited to the merits of the abduction claim and not the merits of the underlying custody battle." *Id.* To prevail, the party seeking relief must establish by a preponderance of the evidence that the child was wrongfully removed or retained as defined by the Hague Convention. *Id.* (referring to 42 U.S.C. § 11603, the predecessor statute of 22 U.S.C. § 9003.). Article 3 of the Hague Convention defines a removal or retention as "wrongful" when:

> a. it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
> b. at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.
>
> The rights of custody mentioned in sub-paragraph a above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

*Id.* at 1286–87 (quoting Hague Convention art. 3, T.I.A.S. No. 11, 670, at 4–5, 1343 U.N.T.S. 89, at 98–99.)

In opposition to the petition, the Respondent argued in his motion to dismiss and at the December 1, 2023 hearing that I.A.B. was born in the United States and that a Parenting Plan established by the Eleventh Judicial Circuit in and for Miami-Dade County established by mutual agreement that I.A.B.'s country of habitual residence is the United States. (Mot. to Dismiss, ECF No. 19 ¶¶ 3, 6, 14.) Courts must consider the totality of the circumstances in determining the habitual residence of a child for Hague Convention purposes. *Monasky v. Taglieri*, 140 S. Ct. 719, 729 (2020). "As best I can determine, the concept of "habitual residence" [. . .] means the place where the child in fact has been living for an extended period—unless that place was never regarded as more than temporary or there is another place to which the child has a strong attachment." *Id.* at 734-35 (2020) (Alito, J., concurring). I.A.B. was born in Miami and lived here with both parents until 2017, when the Petitioner moved to Argentina due to immigration issues, bringing the child with her. The child does not hold Argentine citizenship. In June 2021, the parties signed a Parenting Agreement, under the terms of which it was agreed the child would live with the Petitioner in Argentina until she was ten years old (January 2025), at which time

she would return to Miami, and the Respondent was allowed time sharing in Miami during the extended summer and winter school breaks until that time. In December 2022, the Petitioner allowed the Respondent to exercise his summer visitation and allowed the paternal grandfather to take the child to Miami with the understanding the child would be returned to Argentina in March 2023. The grandfather returned to Argentina in March 2023 without the child, who remains living in Miami with the Respondent. The Respondent told the Petitioner he did not intend to return the child.

The Petitioner now claims that she was defrauded into signing the Parenting Plan because she did not understand the contents of the document when she signed it, and that the United States therefore should not be regarded as the child's habitual residence. A person seeking to disavow a contract based upon their claim of not being proficient in English must establish more than lack of English proficiency to render the contract unenforceable, such as fraud on the part of the other party. "[I]nability to read in English will not preclude a person from entering into a binding contract that he signs without reading." *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Benton,* 467 So.2d 311, 313 (Fla. Dist. Ct. App. 1985). "Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding. No party to a written contract in this state can defend against its enforcement on the sole ground that he signed it without reading it." *Sabin v. Lowe's of Florida, Inc.,* 404 So.2d 772, 773 (Fla. Dist. Ct. App. 1981). Federal courts have similarly found that inability to understand English does not invalidate a contract. *Valdez v. Bags, Inc.,* No. 16-20390-Civ-King/Torres, 2016 U.S. Dist. LEXIS 194163, at *8 (S.D. Fla. June 30, 2016) (collecting cases).

The Petitioner testified that she believed that the documents merely established the Respondent's paternity of the child and set forth the legal name of the child agreed to by the parties. However, this subjective belief is insufficient to establish that the Petitioner's agreement was fraudulently obtained. The Respondent sent the Parenting Plan by email to the Petitioner on May 14, 2021, several weeks before it was executed by the Petitioner, but the Petitioner claims that she never looked at her emails. The Petitioner then signed the Parenting Plan before a notary public in Argentina, affirming in Spanish that she agreed to the terms. The Petitioner admitted that no one prevented her from having the documents translated and no one prevented her from speaking to an attorney before signing the documents. The Petitioner also admitted that while in the United States, she took some English classes and that she does speak and understand some English. Additionally, the Parenting Plan is eight pages long and allows the child to live in Argentina with the Petitioner until the age of ten.

The Court finds the testimony of the Petitioner to be not credible and finds unconvincing the suggestion that the Respondent would conspire to defraud the Petitioner to sign an agreement giving her the majority of time sharing for several years. Thus, the Court weighs heavily the parties' agreement that the United States should remain the child's habitual residence despite the intervening time spent in Argentina.

The Court therefore concludes that I.A.B.'s habitual residence is the United States based upon the totality of the circumstances, including her parents' shared intentions as reflected in the Parenting Plan and Final Judgment of Paternity and the child's practical circumstances. Because the child is currently present in the country of habitual residence, relief under the Hague Convention is not available. *See* Hague Convention Preamble, T.I.A.S. No. 11,670, at 4, 1343 U.N.T.S. 89, at 98.

Accordingly, the Court hereby **denies** Petitioner Bre's petition for return of I.A.B. (**ECF No. 1**) and **orders** the United States Marshal to promptly return Respondent Aguirre's passport and the child's passport to him. All pending motions are **denied** as moot. The Clerk is directed to **close** this case.

**Done** and **ordered** in Miami, Florida on December 1, 2023.

_____
Robert N. Scola, Jr.
United States District Judge